Ricks et al vs. Gantt.

---

No. 1204.

WALTER A. RICKS ET AL. VS. ELBERT GANTT.

When a party to a suit, fully aware of the relation which the Judge bears to the cause, as exhibited by his own pleadings, fails to recuse him, and submits his cause for determination, he will not be heard, after judgment, to assign the incompetency of the Judge as a ground for new trial. In this case there was no ground for recusation of the Judge.

The prescription of the action against the surety of an administrator does not run from the date of the bond, but only from the time when the right of action against the surety arises, that is, after judgment and other " necessary steps " have been taken against the principal.

When judgment against the principal has been obtained, execution issued and returned *nulla bona*, and insolvency of principal established, no other steps are necessary to justify recourse against the surety.

The liability of the surety is limited by the amount of his bond. When the amount is left in blank in the bond, the law fills the blank with the amount fixed by itself, to-wit: one-fourth over the amount of the inventory, bad debts deducted.

Interest runs on the amount due by the surety from the time when it became due and demandable, viz: after the taking of the necessary steps against the principal.

APPEAL from the Thirteenth District Court, Parish of St. Landry. *Hudspeth,* J.

*H. L. Garland* for Plaintiffs and Appellees.

*Lewis & Brother* for Defendant and Appellant.

The opinion of the Court was delivered by

FENNER, J.   This is a suit by the plaintiffs, as heirs of Henry O. Terrell, deceased, against Elbert Gantt, as surety on the bond of Thomas

C. Anderson, given for his faithful administration and accounting as curator of the succession of said deceased.

The plaintiffs having been recognized and put in possession as sole heirs of Terrell, took proceedings to compel an accounting by Anderson, and, in due course of law, obtained a judgment against him for $2,960, with legal interest on one-third thereof from December 26th, 1866, on one-third from December 26, 1867, and on one-third from July 26th, 1868. After a futile effort to execute this judgment by *fi. fa.*, which was returned *nulla bona*, they instituted this suit against his surety.

From an adverse judgment, the surety appeals and makes the following points, which we shall consider in their order:

1. The incompetency of the District Judge, because of interest in the cause, and because of his having been counsel therein.

It appears that in 1867, the Judge, then a practicing attorney, was appointed by the probate court as attorney of absent heirs of Terrell. He qualified and served as such until his appointment as Judge, and received in 1867 from Anderson, curator, the sum of $50 as his fee therefor.

When the present action was instituted, the defendant in his answer claimed that, on whatever amount might be awarded against him, he should be allowed credit for various legal costs, fees and charges paid by Anderson as administrator, specifying, among other items, " fifty dollars paid G. W. Hudspeth, attorney of absent heirs."

It thus appears that, at the inception of the suit, the defendant was fully aware of the relations of the Judge to the cause, upon which his present charge of incompetency is based. Nevertheless, without objection, he joined issue and, in fact, expressly asked the Judge to pass upon the very question as to whether the payment made to him " was properly or improperly made, and whether defendant should or should not be allowed a credit for it," which question is the sole ground of personal interest urged in his subsequent pleadings as cause for recusation. The case, a long and difficult one, involving a transcript of 593 pages and occupying three days in its trial, was tried by jury and resulted in the verdict and judgment against the defendant.

Then defendant made application for new trial, on the grounds of error in the charge to the jury and also of incompetency of the Judge on the two grounds above stated : 1st, that he had been of counsel; 2d, personal interest in the manner heretofore stated in the very language of the application for new trial.

The Judge overruled the motion for new trial.

We are now told by the counsel for defendant, that the Judge had

no right to pass upon the motion, under the authority of State ex rel. Tyrrell vs. Judge, 33 An. 1293. The inapplicability of that case is manifest. No objection was made to the Judge's passing on the motion for new trial. On the contrary, he was expressly asked to grant a new trial. There has not, in fact, been any recusation of the Judge by the defendant. He has merely moved for a new trial, and submitted it to the Judge for determination, with the expectation, no doubt, of recusing him on the new trial, if granted. He had the right to decide the motion, or, at least, it does not lie in defendant's mouth to deny it.

The contention of defendant, that the effect of Act 35 of 1882 is to destroy absolutely the competency of Judges lying under any of the causes of recusation there stated, in such manner as to render absolutely null and void their proceedings, and to make such defect of competency incurable, even by consent of parties, is untenable.

That Act, by its terms, merely amends and re-enacts Art. 338 of the Code of Practice, and the Article, as thus amended, resumes its place by the side of the other Articles of the Code on that subject, and all must be construed together. It is obvious, that it refers only to recusation by the defendant defined in the previous Article, and leaves the power of the Judge to recuse himself, as stated in the subsequent Article 340, and as it has always stood. The power of the defendant to waive this absolute right conferred upon him cannot be questioned. His right to act arises whenever he discovers the cause of recusation; but when, as in this case, he submits his case to the Judge, with full knowledge of the cause of recusation, and asks the Judge to pass upon the very question in which he afterwards claims he is interested, the authority of the Judge cannot, after judgment, be questioned.

In justice to the District Judge, we would say that it is apparent he was never "employed or consulted as advocate in the cause," in the language of the 3d paragraph of Act 35 of 1882, and that he is not interested in the cause.

2. The prescription of ten years is pleaded, which defendant seems to claim should run, as against the surety, from the date of the bond.

All personal actions are prescribed by ten years, unless otherwise limited; but, obviously, the prescription only runs from the time when the right of action accrues. In the case of judicial sureties, by the express terms of Art 3066, C. C., and Section 19, Revised Statutes, the right of action does not arise against them until the necessary steps have been taken to enforce payment against the principal. Such necessary steps include suit, judgment and execution. There is no pretense that the proceedings against the principal were barred at the time when they were taken and, therefore, the plaintiffs were in their

right when they so proceeded. Only thereafter did the right of action against defendant arise, and the same is not prescribed.

3. It is urged that plaintiffs did not take " the necessary steps to enforce payment" against Anderson, before bringing the suit against the surety.

We have not only the sheriff's return on the *fi. fa.*, but other evidence fully satisfying us that Anderson is insolvent, and has no property not under seizure and mortgaged beyond its value.

This is sufficient to justify recourse on the surety. Alley vs. Hawthorn, 1 An. 122; Wells vs. Roach, 10 An. 543; Bourgeat vs. Adams, 11 An. 78; 14 An. 235; 23 An. 573; 26 An. 542.

The authorities quoted exclude the idea, that amongst the " necessary steps" contemplated by the law, the plaintiffs were bound to resort to the remedies of imprisonment or *distringas*, under Arts. 1012 and 1058, C. P., the latter of which, however, has no application in this case.

4. The final error assigned by defendant is, that the judgment is excessive both as to principal and interest.

The bond in this case was given in pursuance of Articles 1126 and 1127, Civil Code. The amount of the bond was left in blank; but it is well settled, that judicial bonds are to be construed by the laws under which they are given, and that any clause which is superadded must be rejected and any which is omitted, supplied. Slocomb vs. Robert, 16 La. 174; Webb vs. Thorn, *Id.* 196.

This principle has been applied to the interpolation of the amount fixed by the law, when that has been omitted from the bond. Mason vs. Fuller, 12 An. 68.

The Art. 1127, C. C., fixes the amount of the curator's bond at one-fourth over and above the amount of the inventory, bad debts deducted.

The amount of the inventory in Terrell's succession was $1,487, adding to which one-fourth gives $1,848.75 as the amount for which the bond sued on was given. This is unquestionably the limit of the surety's liability. We are unable to comprehend the force, or even the meaning of the argument, that the surety can be held liable beyond the amount of his bond. The proposition is certainly startling and, though gravely urged, is not supported by authority. The terms of the bond, the nature of suretyship, and limitation of amount fixed by the law itself, absolutely negative the claim.

We consider defendant's liability to the full amount of his bond is clearly established in this case, Anderson's defalcation exceeding this amount, even after allowing all the credits claimed in his behalf. On

this debt of the surety, as on all other debts, legal interest runs from the time it became due.

When did it become due? Only after the "necessary steps" had been taken against the principal, up to which time no demand could be made on the surety for anything, and he was in no manner in default. We think the interest is only allowable from the date of the sheriff's return on the *fi. fa.*, viz: May 1st, 1882.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be amended, by reducing ·the amount thereof to the sum of eighteen hundred and fifty eight 75-100 dollars, with legal interest thereon from May 1st, 1882, and that, as thus amended, the same be now affirmed, defendant to pay costs of the District Court, and plaintiffs and appellees to pay those of this appeal.