(76 South. 722)

No. 22777.

STATE v. CLARK.

(Oct. 29, 1917.)

*(Syllabus by the Court.)*

1. HOMICIDE ⬳217—SECONDARY EVIDENCE—DYING DECLARATION.

Where the loss or destruction of paper containing a written memorandum of a dying declaration is first proved, the contents of such written memorandum, if otherwise admissible as a dying declaration, may be proved by parol.

2. JUDGES ⬳51(2)—RECUSATION—DEMAND.

Where the defendant becomes aware during the trial that a cause may exist to demand the recusation of the judge, it is too late for him to demand such recusation after trial and conviction.

Appeal from Twenty-Seventh Judicial District Court, Parish of Assumption; Philip H. Gilbert, Judge.

Loja Clark was convicted of murder and she appeals. Affirmed.

Marks, Le Blanc & Talbot, of Napoleonville, for appellant. A. V. Coco, Atty. Gen., and George Seth Guion, Dist. Atty., of Napoleonville (Vernon A. Coco, Asst. Atty. Gen., of counsel), for the State.

LECHE, J. Defendant, charged with murder, appeals from a verdict wherein she was found guilty without capital punishment.

[1] She relies upon two bills of exception, the first of which she reserved to the trial judge's ruling upon the admissibility of parol evidence to prove a dying declaration, of which a written memorandum was taken at the time it was made. It seems that the coroner took down in writing the dying declaration of the deceased shortly after the shooting, on September 13, 1916. The deceased thereafter underwent treatment, and, his condition having much improved, the coroner, acting under the honest belief that all danger of death had passed, destroyed the paper upon which was written the dying declaration. These facts, constituting a foundation, having first been proved, parol evidence was admissible to show the contents of the written dying declaration. The general rule is that the contents of written instruments, when lost or destroyed, may always be proved by parol, and the rule has been applied to a dying declaration in the case of State v. Rector, 35 La. Ann. 1098. We are therefore of the opinion that the trial judge's ruling is correct.

[2] The second bill is to the refusal of the judge to grant a new trial to defendant, on the ground that he, the trial judge, should have recused himself in the case. During the trial, while the coroner was on the stand, it appears that the accused discovered, from the testimony of that officer, that at the time the killing took place, on the 13th of September, 1916, the trial judge, who was afterwards elected to the bench, was district attorney and had advised the coroner, prior to indictment, as to his duties in this case. The judge's testimony, which is annexed to the bill, is in the following words:

"My recollection is that the only discussion I had with the coroner, and the only thing I positively remember of having advised him, was at the time the deceased, Mr. Perkins, was in New Orleans, at the hospital or other infirmary, that it was his duty to notify such place where Mr. Perkins was that, in the event of death, not to remove the body until he reached there, in order that he, as coroner of the Parish of Assumption, could view the body, in order to prove corpus delicti and to ascertain the cause of death. The only other party that I discussed this matter with was the present district attorney, who was then nominated to the office, and who, I then knew, would have to prosecute the

case. I specially requested him to take charge of the investigation of this case, because I then knew I would become the trial judge thereof, and did not want to put myself in a position where I would have to be recused."

It further appears that defendant, at the time she first discovered these facts, during the trial, made no objection to the proceeding, but allowed the trial to continue uninterruptedly until after conviction. Thereafter, on a motion for a new trial, she raised, for the first time, the objection that the trial judge should have recused himself.

Without expressing any opinion as to whether there was a legal cause for recusation, we believe that defendant waived her right to challenge the competency of the judge on such ground, when she consented to proceed with the trial.

In State v. Arbuno, 105 La. 719, 30 South. 163, it was held that a prisoner on trial, under our laws, can only exceptionally be permitted to stand by and suffer irregular proceedings to take place and then ask to have the proceedings reversed on account of such irregularities. It was also held that there are few exceptions to the doctrine that a party in a cause may waive any right which the law has given him, even a constitutional one. See, also, State v. Rose, 114 La. 1061, 38 South. 858; State v. Lee, 116 La. 608, 40 South. 914; State v. Baudoin, 115 La. 774, 40 South. 42; State v. Duncan, 118 La. 705, 43 South. 283; State v. Emile, 140 La. 832, 74 South. 163.

In a recent decision by this court (State v. Bordelon, 141 La. 611, 75 South. 429) the doctrine of waiver by silence and implied consent was applied to an objection which might have been raised to the competency of a judge under circumstances very similar to those in the present case. We are therefore of the opinion that defendant's second ground of complaint is not supported by law.

For these reasons, the judgment appealed from is affirmed.